IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

APR 3 0 2010

CLERK, U.S. DISTRICT COURT

Sarah M. Greene,              )
                              )
        Plaintiff,            )
                              )
        v.                    )   Case No. 1:09cv546 (GBL)
                              )
National Head Start           )
Association, Inc.,            )
                              )
        Defendant.            )

### MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant National Head

Start Association, Inc.'s ("NHSA") Motion for Summary Judgment

(Dkt. No. 54). This case concerns Plaintiff Ms. Sarah Greene's

claims that NHSA wrongfully terminated her employment as

president and chief executive officer of the corporation and that

NHSA board officers defamed her by stating that the board of

directors fired her improperly diverting NHSA funds to herself.

There are four issues before the Court. The first issue is

whether a material factual dispute exists as to Ms. Greene's

wrongful termination – breach of contract claim (Count I) where

the Employment Agreement ("the Agreement") allowed the NHSA Board

of Directors ("the Board") to discharge Ms. Greene "at any time

that it determines the executive director's performance of her

duties has been unsatisfactory." The second issue is whether

Plaintiff's implied covenant of good faith and fair dealing claim

(Count II) can survive Defendant's Motion for Summary Judgment

where Plaintiff alleges that the Board fired her for objecting to election procedures, not for unsatisfactory job performance. The third issue is whether a genuine issue of fact for trial exists as to Plaintiff's retaliatory discharge claim (Count IV) where Plaintiff argues that the termination of her employment violated the public policy expressed in sections 13.1-846 and 13.1-873 of the Virginia Code. The fourth issue is whether there is a genuine factual dispute as to Plaintiff's defamation claim (Count V) where the chairman of the NHSA Board stated to the executive director of a state Head Start association that the Board discharged Plaintiff because she was improperly diverting NHSA funds to herself.

The Court grants NHSA's Motion for Summary Judgment on all counts.[1] The Court grants Defendant's Motion as to Count I because Plaintiff was an at-will employee and the Board terminated her employment as authorized under the Agreement. The Court grants Defendant's Motion as to Count II because Virginia does not recognize implied covenants in at-will employment contracts. The Court grants Defendant's Motion as to Count IV because Plaintiff was not a member of the class of persons protected by the public policy underlying section 13.1-846 of the Virginia Code and because section 13.1-873 expresses no public

---

[1]The Court grants Defendant's Motion for Summary Judgment on Count III as unopposed. (Pl.'s Opp'n 2 n.1.)

2

policy. The Court grants the Motion as to Count V because the chairman made the statement to a member of Head Start with a common interest in the reasons for Plaintiff's discharge and Plaintiff cannot prove by clear and convincing evidence that the statements were made with malice.

## I. BACKGROUND[2]

In July 1991, Plaintiff Sarah Greene became president and chief executive officer ("CEO") of the National Head Start Association, Inc. In February 1992, the Board and Ms. Greene entered into an Employment Agreement ("the Agreement") which established her duties, salary, and entitlement to fringe benefits as CEO. The Agreement also contained a "Term of Employment" provision, which stated:

> The Board of Directors of NHSA may terminate this agreement at any time that it determines the executive director's performance of her duties has been unsatisfactory. The executive director may terminate this agreement with a 30-day written notice to the Board of Directors.

(Compl. Ex. A at 4.)

In April of 2007, NHSA held a board of directors officer election. Only current board members were eligible for election to officer positions. The procedures in place at that time required any board member seeking election to submit his or her

---

[2]The Court views the facts in the light most favorable to Plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)

3

name by a specified deadline. However, Mr. John Hales, a board member at the time of the election, wound up as a write-in candidate despite his failure to submit his name for nomination to the chairman position by the 2007 election deadline. When the results were tallied, Mr. Hales received 5163 write-in votes for the chairman position while the currently seated chairman, Mr. Ron Herndon, received only 1307. The Board suspected manipulation of the election procedures and instituted an investigation. Ultimately, the Board amended the NHSA Bylaws and instituted a new officer election procedure. The Board then re-elected Mr. Herndon chairman.

Mrs. Greene took no active part in the election and was not permitted to vote. She did, however, respond to inquiries about the election procedures that she received from various state offices. She responded that NHSA's election procedures permitted write-in candidates. She also expressed her belief that the Board should hold a new election instead of re-electing Mr. Herndon.

At the Board's October 5, 2007, meeting, the NHSA Board created a committee to evaluate Ms. Greene's job performance and to provide a recommendation as to what action, if any, the Board needed to take in response to Ms. Greene's performance. Among the Board's concerns were NHSA's revenue problems from 2000 through 2007. NHSA's 2007 audit revealed several issues,

4

including the use of restricted grant monies for general operating expenses. On October 7, 2007, Ms. Janis Santos, Vice Chairwoman of the Board, sent Ms. Greene a letter notifying her of the committee's formation. The letter also stated that Ms. Greene remained "an at will employee of NHSA serving at the discretion of the Board." (Def.'s Mem. Supp. Mot. Summ. J. Ex. Q.) Also in 2007, the Board hired a law firm to investigate the allegations of financial impropriety at NHSA. The investigation revealed two checks identified as bonus checks paid to Ms. Greene. The checks were written on NHSA's operating account, and therefore no taxes were withheld on the checks. According to Ms. Greene, the Board previously approved an annual bonus and Mr. Herndon authorized Ms. Greene to instruct NHSA's Fiscal Director to prepare her bonus checks. After several meetings, the committee voted two to one to recommend to the Board that Ms. Greene's employment be terminated. On December 5, 2007, the Board voted thirty to seven to terminate her employment, with one abstention.

On October 16, 2008, Ms. Greene filed suit against NHSA in the United States District Court for the District of Columbia alleging the following counts:

Count I: Wrongful Termination - Breach of Contract;

Count II: Wrongful Termination -Breach of Implied
Covenant of Good Faith and Fair Dealing;

Count III: Promissory Estoppel;

Count IV: Wrongful Termination - Retaliatory Discharge; and

Count V: Defamation.

On April 28, 2009, the District Court for the District of Columbia granted NHSA's Motion to Transfer Venue and on May 15, 2009, the case was transferred to this Court. NHSA now moves the Court for summary judgment in its favor on all counts alleged in the Complaint.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

In reviewing a motion for summary judgment, the court views the facts in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48. A "material fact" is a fact that might affect the outcome of a

6

party's case. *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Anderson*, 477 U.S. at 248. Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## III. Analysis

The Court grants Defendant's Motion for Summary Judgment on all counts because no genuine issues for trial exist as to any of Plaintiff's claims. The Court addresses Plaintiff's wrongful termination claims and defamation claim in order below.

A. *Wrongful Termination Claims*

1. Count I, Breach of Contract

The Court grants Defendant's Motion for Summary Judgment on Plaintiff's breach of contract claim because Plaintiff was an at-will employee whose employment was properly terminated in accordance with the Agreement. Under Virginia law, employment is presumed to be at-will absent sufficient evidence to the contrary. *Dray v. New Mkt. Poultry Prods., Inc.*, 518 S.E.2d 312, 313 (Va. 1999) (citations omitted); *Hoffman Specialty Co. v. Pelouze*, 164 S.E. 397, 399 (Va. 1932). Moreover, where there is no specified term of employment in the contract, the employment remains at-will. *See, e.g., Cave Hill Corp. v. Hiers*, 570 S.E.2d 790, 793 (Va. 2002); *County of Giles v. Wine*, 546 S.E.2d 721, 723 (Va. 2001) (the presumption of at-will employment may be rebutted only by sufficient evidence that employment is for a definite term); *Schryer v. VBR*, 25 Va. Cir. 464 (Fairfax Co. Cir. Ct. 1991) (citing *Miller v. SEVAMP, Inc.*, 362 S.E.2d 915 (Va. 1987)); *Meade v. Appalachian Power Co.*, 11 Va. Cir. 234 (Washington Co. Cir. Ct. 1988) ("Virginia adheres to the common law rule that when the intended duration of a contract for the rendition of services cannot be determined by fair inference from the terms of the contract, then either party is ordinarily at liberty to terminate the contract at will."). However, if an employment contract is terminable only for cause, it is a contract for a

8

fixed duration not terminable at will. *Progress Printing Co. v. Nichols*, 421 S.E.2d 428, 430 (Va. 1992).

Here, Plaintiff argues that she was not an at-will employee because the Employment Agreement allowed the Board to terminate her employment only if it first found she had unsatisfactorily performed her duties as president and CEO. Plaintiff argues that this requirement constituted a "just cause provision" which transformed her status from that of an at-will employee to an employee for a fixed duration. She further argues Defendant breached the Agreement because the Board fired her not for unsatisfactory performance as required under the Agreement, but instead because she took an unfavorable position regarding the election. The Court rejects these arguments for two reasons.

First, Plaintiff was at all times an at-will employee because the language of the Agreement did not set forth a just cause provision. Permissive language is insufficient to rebut the presumption of at-will employment; to create a contract of fixed duration the language in an employment contract must unconditionally establish that discharge will only occur for just cause. *Compare Giles*, 546 S.E.2d at 723 (at-will employment where provision stated employee "*may* be discharged for inefficiency, insubordination, misconduct, or other just cause" instead of stating that an employee "shall only be discharged" for those reasons) *and Norfolk Southern Ry. Co. v. Harris*, 59

9

S.E.2d 110, 111 (Va. 1950) (employment contract for a fixed duration where contract stated "Engineers will not be disciplined or dismissed from the service without a just cause").

Here, the Agreement stated "[t]he Board of Directors of NHSA may terminate this agreement at any time that it determines the executive director's performance of her duties has been unsatisfactory." (Compl. Ex. A ¶ 4.) The provision placed no limits on the Board's ability to exercise discretion in evaluating Plaintiff's performance and reaching a conclusion as to whether her performance was unsatisfactory. Furthermore, the term "unsatisfactory" established a completely subjective standard for discharge susceptible only to the Board's interpretation as reflected by the language "at any time [the Board] determines." Nothing in the Agreement suggests that "unsatisfactory" was synonymous with just cause. In exercising its discretion, "unsatisfactory" in the Board's view could rightfully be something far less than just cause. As such, Plaintiff fails to rebut the presumption of at-will employment because the provision did not unconditionally establish that termination must be for cause.

Second, regardless of whether Plaintiff was or was not an at-will employee, Defendant did not breach the Agreement because the Board acted in accordance with the Agreement when it terminated her employment. The Agreement provided the Board with

10

complete discretion to determine whether Plaintiff's performance was satisfactory. The record shows that the Board engaged in a systematic process in reaching its determination. The Board had several concerns about Plaintiff's leadership of NHSA, including the failure to conduct an audit in 2005, misuse of restricted funds, and Plaintiff's continued hiring of personnel despite a Board-instituted hiring freeze. (Greene Dep. 101:6-106:22, July 7, 2009; Gray Dep. 133:9-22, 141:1-21, Nov. 9, 2009; Santos Dep. 17:10-18:16, 31:19-32:18, June 19, 2009; Def.'s Ex. G.) During its October 5, 2007, meeting, the Board passed a resolution to establish an ad hoc committee to evaluate Plaintiff's performance (Def.'s Ex. P; Santos Dep. 78:13-17.). That committee met five times and ultimately voted two to one to recommend to the Board that Plaintiff be discharged. (Santos Dep. 99:7-17, 139:7-15.) On December 5, 2007, the Board met to discuss the committee's recommendation and voted for termination thirty to seven, with one abstention. (Def.'s Ex. R.) Plaintiff points to no facts suggesting that the evaluation was a sham or that the Board operated to cover up a sinister motive. Other than her own bald assertions, Plaintiff offers no evidence that the Board fired her for her position on the election. It is not within the Court's province to challenge the wisdom of a decision reached and agreed to by thirty Board members. Hence, regardless of whether Plaintiff disagrees with the Board's decision, there is no

genuine issue for trial as to her breach of contract claim. Therefore, the Court grants summary judgment in favor of Defendant on Plaintiff's Wrongful Termination – Breach of Contract Claim (Count I).

## 2. Breach of Implied Covenant of Good Faith and Fair Dealing

The Court likewise grants Defendant's Motion for Summary Judgment on Count II because Virginia does not recognize an implied covenant in the at-will employment context. As to employment contracts, "Virginia law is decidedly straightforward on this matter: the Commonwealth does not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in employment contracts, and in at will employment contracts in particular." *Devnew v. Brown & Brown, Inc.*, 396 F. Supp. 2d 665, 671 (E.D. Va. 2005) (citing *Baradell v. Bd. of Soc. Servs.*, 970 F. Supp. 489, 494 (W.D. Va. 1997); *Mason v. Richmond Motor Co.*, 625 F. Supp. 883, 889 (E.D. Va. 1986), *aff'd*, 825 F.2d 407 (4th Cir. 1987)). Plaintiff argues Defendant breached an implied covenant of good faith and fair dealing when it terminated her employment because the Board fired her not for her performance but instead because she objected to the Board's actions following the 2007 officer election. As mentioned above, Plaintiff was an at-will employee and therefore no issue for trial exists as to whether Defendant breached an implied covenant in terminating her employment. Thus, the Court grants summary

12

judgment in favor of Defendant on Plaintiff's Wrongful
Termination - Breach of Implied Covenant of Good Faith and Fair
Dealing Claim (Count II).

### 3. Retaliatory Discharge

The Court also grants Defendant's Motion for Summary
Judgment on Plaintiff's retaliatory discharge claim because
Plaintiff is not a member of the class of persons protected by
the public policy underlying section 13.1-846 of the Virginia
Code and section 13.1-873 does not express any public policy.
Virginia recognizes a narrow exception to the at-will employment
doctrine where a public policy established by statute is violated
by the defendant's termination of the plaintiff's employment.
*See Bowman v. State Bank of Keysville*, 331 S.E.2d 797, 798 (Va.
1985). Two instances will trigger a *Bowman*-type public policy
exception. The first instance is where the public policy is
explicitly expressed in the statute. *See Lockhart v.
Commonwealth Educ. Sys. Corp.*, 439 S.E.2d 328, 331 (Va. 1994).
The second instance is where a public policy "underlying" the
statute is violated. *Miller*, 362 S.E.2d at 918. In that
instance, the public policy underlying the statute must be
"designed to protect the property rights, personal freedoms,
health, safety, or welfare of the people in general. . . . The
exception [is] not so broad as to make actionable those
discharges of at-will employees which violate only private rights

13

or interests." *Id.* In both instances, the plaintiff must be among the class of persons protected by the specific public policy to invoke a public policy exception. *Dray,* 518 S.E.2d at 313.

Here, Plaintiff argues that a public policy exception to the at-will employment doctrine applies because section 13.1-846 of the Virginia Code protects the rights of members of non-stock corporations to vote in accordance with the corporation's bylaws or articles of incorporation. She also argues that Defendant violated public policy because section 13.1-873 of the Virginia Code imposes a duty upon officers of non-stock corporations to perform their duties in accordance with the bylaws or, to the extent consistent with the bylaws, as prescribed by the board of directors. She argues that Defendant violated the public policy expressed in both statutes because it terminated her employment based on her objections concerning how the Board handled the 2007 officer election. The Court rejects both arguments.

First, as to section 13.1-846, the public policy exception does not apply because Plaintiff is not among the class of persons protected by the underlying policy. Section 13.1-846 fails to explicitly state any public policy, so any exception to the at-will employment doctrine must derive from a public policy underlying the statute and Plaintiff must be of the class of persons protected by that policy. Section 13.1-846, entitled

"Voting entitlement of members," delineates voting rights for two different classes of persons, neither of which Plaintiff belongs to. The first class includes a corporation's members. As to that class, the statute restricts the members' right to vote to instances where the right to vote is "conferred by the articles of incorporation or if the articles of incorporation so provide, in the bylaws." VA. CODE ANN. § 13.1-846(A). Where voting rights are conferred, "[u]nless the articles of incorporation provide otherwise, in the election of directors every member, regardless of class, is entitled to one vote for as many persons as there are directors to be elected at that time and for whose election the member has a right to vote." § 13.1-846(C). The second class includes the directors of a corporation where "a corporation has no members or its members have no right to vote." § 13.1-846(D). Under that scenario, "the directors shall have the sole voting power." Id.

As the language of the statute makes clear, section 13.1-846(A) protects two classes of individuals, members with the right to vote and, in their absence, directors with the right to vote. It is equally clear that any public policy expressed in the statute fails to reach Plaintiff, an officer who admittedly had no voting rights and no right to intervene in the election itself. (Greene Dep. 159:10-22, July 7, 2009.) As such, Plaintiff is not protected by any public policy expressed in

section 13.1-846 of the Virginia Code.

Second, Plaintiff's reliance on section 13.1-873 is misplaced because that statute describes the powers and duties of an officer; it does not express any public policy. Section 13.1-873 provides "[e]ach officer has the authority and shall perform the duties set forth in the bylaws or, to the extent consistent with the bylaws, the duties prescribed by the board of directors or by direction of an officer authorized by the board of directors to prescribe the duties of other officers." § 13.1-873. Section 13.1-873 merely sets forth an officer's duties and her source of authority; it does not offer a statement of public policy. *See generally City of Virginia Beach v. Harris*, 523 S.E.2d 239, 246 (Va. 2000) (no public policy stated by statute that merely described the powers and duties of an organization). As such, the Court grants Defendant's Motion for Summary Judgment on Plaintiff's Wrongful Termination – Retaliatory Discharge Claim (Count IV).

B. *Defamation (Count V)*

The Court grants Defendant's Motion for Summary Judgment on Plaintiff's defamation claim because Mr. Herndon's statements are protected by a common interest qualified privilege. In Virginia, a defamatory statement is actionable *per se* if it: 1) imputes to the person a crime of moral turpitude for which the person could be indicted and punished; 2) imputes to the person an infectious,

contagious disease which would exclude the person from society; 3) imputes to the person unfitness to perform professional duties, or a lack of integrity in the discharge of those duties; or 4) has the tendency to prejudice the person in her profession or trade. *See Carwile v. Richmond Newspapers, Inc.*, 82 S.E.2d 588, 591 (Va. 1954).

Virginia recognizes a qualified privilege for communications between persons "on a subject in which the persons have an interest or duty." *Larimore v. Blaylock*, 528 S.E.2d 119, 121 (Va. 2000). Generally, "employment matters are occasions of privilege in which the absence of malice is presumed." *Id.* at 122. However, a privilege will not arise where "statements are communicated to third parties who have no duty or interest in the subject matter, even if those third parties are fellow employees." *Id.* Likewise, a plaintiff can defeat the privilege by proving by clear and convincing evidence that the communication was made with malice. *Id.* The presumption against malice may be rebutted by showing that the speaker knew the statement to be false; that he made the statement with reckless disregard of the truth; or where the communication was made with "a sinister or corrupt motive, such as hatred, revenge, personal spite, ill will, or desire to injure the plaintiff." *Great Coastal Express, Inc. v. Ellington*, 334 S.E.2d 846, 851 (Va. 1985).

17

Here, Plaintiff argues that Mr. Herndon's statement to Mr.
Joel Ryan that Plaintiff was discharged for improperly diverting
NHSA funds to herself is *per se* defamatory.[3] Plaintiff further
argues that the statement is not protected by a qualified
privilege because Mr. Ryan was no longer an employee of NHSA at
the time that Mr. Herndon made the statements to him. (Pl.'s
Opp'n 6.) This argument fails because, even if Mr. Ryan was no
longer employed by the national association, as executive
director of the Washington State Association of Head Start he
remained a member of Head Start. "The common interest of members
of religious, fraternal, charitable or other non-profit
associations, whether incorporated or unincorporated, is
recognized as sufficient to support a privilege for
communications among themselves concerning the qualifications of
the officers and members and their participation in the
activities of the society." RESTATEMENT (SECOND) OF TORTS § 596
(1977). Hence, communications are privileged so long as the
speaker "'has an interest, or owes a duty, legal, moral, or
social'" in the subject matter and the listener shares that
interest. *Tyree v. Harding*, 11 Va. Cir. 446, 449 (Lynchburg Co.
Cir. Ct. 1977) (quoting *Taylor v. Grace*, 184 S.E. 211, 213 (Va.

---

[3]In her Opposition Plaintiff also points to statements made
to Mr. Ryan by another Board member, Ms. Shari Shell, as *per se*
defamatory. (Pl.'s Opp'n 6.) However, the Court need not
address this statement because it is not pled in the Complaint
and therefore not properly before the Court.

18

1936)). As Chairman of the Board, Mr. Herndon had an interest in communicating changes in the leadership of the national association to leaders of the state associations. Likewise, Mr. Ryan had an interest in leadership changes at the national level that could potentially affect state association operations. The Board's discharge of Plaintiff as president and CEO is certainly a matter that would interest state associations, as NHSA represents Head Start's interests as a whole. Hence, Mr. Herndon's statement is privileged because it was made to the head of a state association on a topic of common interest.

Plaintiff argues that Mr. Herndon's statements was made with malice and is therefore not protected by a common interest privilege for two reasons. First, Plaintiff argues that Mr. Herndon knew the statement was false because the Board previously authorized Plaintiff bonuses. Plaintiff argues that Mr. Herndon was a member of the Board when it voted in 1999 to increase her benefits package, a package which provided for an annual bonus. (Pl.'s Exs. 9 & 10.) She further argues Mr. Herndon authorized her to instruct NHSA's Fiscal Director, Mr. Charles McKay, to prepare her checks. Plaintiff argues there is ample evidence that Mr. Herndon knew the Board authorized Plaintiff bonuses and that his statement was therefore made with malice.

The Court rejects Plaintiff's argument because, even if Mr. Herndon knew generally that the Board authorized Plaintiff

bonuses at some point in the past, there is nothing to suggest he knew that *these* checks in *these* amounts were authorized bonuses, or that the checks were in fact authorized. According to Plaintiff, the Board authorized her to receive an annual bonus equal to "2% of percentage increase in budget." (Pl.'s Ex. 10.) However, there is nothing before the Court showing that the checks in dispute are equal in amount to that two percent or that these two checks issued in response to the Board's 1999 authorization. Plaintiff has not identified a single writing outlining the process or procedures for determining her bonus amounts or for issuing the bonus checks.[4] Nor has Plaintiff produced records showing the percentage increase in budget each year, or written calculations showing Plaintiff's precise bonus amounts. In short, there is nothing showing the precise dollar amounts to which Plaintiff was entitled to in bonuses. As such, the evidence is insufficient to prove that these checks were Board-authorized bonus checks instead of checks issued for some improper purpose and thus Plaintiff cannot prove by clear and convincing evidence that Mr. Herndon made the statements with malice. The Court therefore grants Defendant's Motion for

---

[4]Plaintiff states in her affidavit that Mr. Herndon told her to instruct Mr. McKay to issue her bonus checks, but this statement is hearsay, unsupported by any documentation. *See Haywood v. North Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997) (stating that conclusory allegations and self serving affidavits, if not supported by evidence in the record, will not preclude summary judgment).

Summary Judgment on Plaintiff's Defamation Claim (Count V).[5]

## IV. Conclusion

The Court grants Defendant National Head Start Association, Inc.'s Motion for Summary Judgment on all counts. The Court grants Defendant's Motion as to Count I because Plaintiff was an at-will employee and Defendant did not breach the Agreement when it terminated her employment after finding her performance unsatisfactory. The Court grants Defendant's Motion as to Count II because Virginia does not recognize an implied covenant of good faith and fair dealing in at-will employment contracts. The Court grants Defendant's Motion as to Count III as unopposed. The Court grants Defendant's Motion as to Count IV because Plaintiff is not among the class of persons protected by the public policy underlying section 13.1-846 of the Virginia Code and because section 13.1-873 expresses no public policy. The Court grants Defendant's Motion as to Count V because Mr. Herndon enjoyed a qualified privilege as to the statement made to a state Head Start director and Plaintiff fails to prove malice by clear and convincing evidence. Accordingly, it is hereby

---

[5]In the Complaint Plaintiff also alleges that Mr. Herndon made a defamatory statement to Ms. Suzanne Vanorman. (Compl. ¶ 96.) However, Plaintiff makes no argument in her Opposition for why the defamation claim should survive as to this particular statement. As such, the Court considers summary judgment conceded in favor of Defendant as to this statement.

21

ORDERED that Defendant National Head Start Association, Inc.'s Motion for Summary Judgment is GRANTED.

The Clerk is directed to forward a copy of this Order to counsel.

Entered this _30th_ day of April, 2010.

/s/
Gerald Bruce Lee
United States District Judge

Alexandria, Virginia